IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW TIGHE,<br>       **Plaintiff,**<br><br>       v.<br><br>**MONA BUSCHAK**, *INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS PRESIDENT OF THE GENERAL MCLANE SCHOOL BOARD*; **RICK SCALETTA**, *INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SCHOOL SUPERINTENDENT*; and **BOARD OF EDUCATION OF THE GENERAL MCLANE SCHOOL DISTRICT**,<br>       **Defendants.** | ) <br> ) <br> ) <br> )  **1:11-cv-224**<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is PLAINTIFF'S MOTION TO COMPEL JAMES D. MCDONALD, JR. TO ANSWER DEPOSITION QUESTIONS (ECF No. 57) filed by Matthew Tighe ("Plaintiff"). Mona Buschak ("Buschak"), Rick Scaletta ("Scaletta"), and General McClane School Board ("School Board") (collectively, "Defendants"), have filed a response in opposition (ECF No. 58), to which Plaintiff has filed a reply (ECF No. 59). Plaintiff's motion is, therefore, ripe for disposition.

### I.    Background

This civil rights action involves actions allegedly taken by Defendants to squelch Plaintiff's speech during several School Board meetings in 2010, which are alleged to have violated Plaintiff's First Amendment rights. Defendants contend that their actions constituted reasonable time, place, and manner restrictions, necessitated by Plaintiff's purportedly disruptive behavior at prior Board meetings.

The instant discovery dispute centers on the deposition of the School Board's solicitor,

1

James McDonald, Jr. ("McDonald"), which took place on October 28, 2013. Defendants identified McDonald as a fact witness in this case because, while serving in his capacity as solicitor, he attended Board meetings and observed Plaintiff's behavior on a number of occasions. McDonald described his involvement in the circumstances surrounding this suit in an affidavit submitted to the Court on March 22, 2013, which is also attached as an exhibit to Plaintiff's motion to compel. As relevant here, the affidavit states

> 3. In 2010, our firm, The McDonald Group, L.L.P., through me, was requested to evaluate how the Board could properly address Matthew Tighe's repeated disruptions of School Board meetings. I regularly attend the School Board's public meetings so I was familiar with Tighe's outbursts, his refusal to follow School Board policy governing persons who speak during the citizen forum section of its meetings, and his defiance of directives from the meeting chair given after the occurrence of those violations. A pattern of disruptive activity had developed which needed to be addressed. Clearly a serious state of affairs had developed.
>
> 4. As requested, in my role as Solicitor, we reviewed the relevant factual circumstances, evaluated state and federal law governing public meetings, a government entity's right to control the conduct of its meetings, and a citizen's right to speak. We then developed suggested methods of addressing Tighe's inappropriate behavior.
>
> 5. In my role as Solicitor, I discussed our findings and opinions with the School Board and with members of the School District's senior administrative staff.
>
> 6. At his February 14, 2013 deposition, Jeffrey Fox, the School District's Business Manager, testified that a conversation occurred prior to a School Board meeting among Superintendent Rick Scaletta, Mr. Fox and me, and during which we discussed our findings and opinions on how situations might be addressed where Tighe disrupts School Board meetings and refuses to leave school property after being instructed to do so by a school official.
>
> 7. I considered that conversation to be confidential and subject to the attorney-client privilege as I was providing legal advice to the School District on options to address situations where Tighe or any other member of the public disrupted a meeting of the School Board.

McDonald Aff. 1-2 (ECF No. 57, Ex. B).

During McDonald's deposition, counsel for Defendants objected to four categories of questions which are now the subject of this motion: (1) questions about whether, in McDonald's view, Plaintiff's conduct at Board meetings "crossed the line;" (2) questions about decisions made by the School Board regarding how to handle Plaintiff at subsequent board meetings; (3) questions about whether Plaintiff's conduct violated Board Policy 903, which establishes the procedure for public participation at Board meetings; and (4) questions about whether the School Board paid the solicitor to draft a brief submitted as part of Plaintiff's bond revocation hearing in a criminal matter that resulted from Plaintiff's conduct at a Board meeting. Various grounds were asserted in support of the objections, but the primary contentions were that the questions impermissibly requested that McDonald make "legal conclusions" or reveal privileged attorney-client communications.

Plaintiff filed this motion on November 19, 2013, requesting that McDonald be ordered to appear for a second deposition to answer the questions to which the objections were raised. Alternatively, he seeks to compel McDonald to submit written responses to the challenged questions. The Court will address the four categories of challenged questions in turn.

## II. Discussion

### A. Questions About Whether Plaintiff's Conduct "Crossed the Line"

Early in McDonald's deposition, he was questioned about an exchange that took place between he and Plaintiff during the May 19, 2010, Board meeting. McDonald's Dep. 63 (ECF No. 57, Ex. C). At that meeting, in response to statements made by Plaintiff, McDonald stated

> Mr. Tighe, I'd like to make some comments to you as solicitor of this Board . . . in my opinion, your comments have clearly crossed the line on a number of occasions. They are inappropriate and they will not be – will not or should not in my judgement (*sic*) – be allowed to continue. And there are a couple of specific areas that I would like to give you as examples.

Transcript of May 19, 2010, School Board Meeting 1 (ECF No. 57, Ex. A). McDonald proceeded to list several instances at prior Board meetings in which Plaintiff's conduct apparently "crossed the line": Plaintiff "threatened" and "intimidated" Board members and he "accused particular members of the administration on a number of occasions of illegal conduct and committing serious crimes without any foundation whatsoever." *Id.* at 1-2. He also explained that a recommendation would be made to the Board regarding how to address Plaintiff's "excesses" and prevent them from happening again. *Id.* at 2.

Later in the deposition, counsel for Plaintiff showed McDonald excerpts of the videos of the August 18, 2010, and December 8, 2010, Board meetings – two of the meetings at which Defendants' allegedly unconstitutional conduct occurred. Plaintiff's counsel stopped the video at several points and questioned McDonald as to whether Plaintiff's conduct "crossed the line." The specific questions to which counsel for Defendants raised objections and to which Plaintiff now seeks to compel responses are as follows:

- "Where is that line? How does a member of the public know that their conduct would cross the line?" McDonald Depo. 70:21-23 (ECF No. 57, Ex. C).

- "And for Mr. Tighe to suggest that the Board members were failing to assume their leadership role. That would not be crossing the line; would it?" *Id.* at 107:6-10.

- "I'm asking that by Mr. Tighe suggesting that Board members failing to uphold their leadership roles. Did you, sitting there, think that that comment crossed the line?" *Id.* at 108:10-14.

- "Well, sitting here, participating in this meeting – not participating, but rather as a solicitor present at the meeting, did you consider Mr. Tighe's statement, suggesting that these Board members had failed to fulfill their leadership roles, to fit within that same category of conduct that you earlier defined as crossing the line?" *Id.* at 112:11-20.

- "Same question as before with this comment. Do you believe – do you find that Mr. Tighe's comment that the school board members had lack of respect for the taxpayers fit within this course of conduct that you described as crossing the

4

line?" *Id.* at 113:21-114:2.

- "Sitting here at this board meeting, did you find that Mr. Tighe's suggestion that the Board members were giving people lip service fit within the course of conduct that you described as crossing the line?" *Id.* at 114:12-18.

- "All right. At timestamp 7:52 Mr. Tighe's statement that the Right to know Law was abused by the prior administration. Do you consider that statement to fit within the course of conduct that you earlier described as crossing the line?" *Id.* at 116:23-117:4.

- "Do you consider Mr. Tighe's comment that the solicitor abused the Right to Know Law to fit within the course of conduct that you described as crossing the line?" *Id.* at 117:13-17.

- "Mr. Tighe's statement that the public has been scammed by the acceptance of predetermined contractors for a wind turbine, do you find that to fit within the course of conduct that you described as crossing the line?" *Id.* at 118:6-12.

- "Mr. McDonald, do you find that Mr. Tighe's statement that Mrs. Buschak mischaracterized his prior statements to fit within that course of conduct that you described as crossing the line?" *Id.* at 118:20-25.

Counsel for Defendants objected to this line of questioning on the ground that the questions called for McDonald to render a "legal conclusion," and he instructed McDonald not to answer.

In moving to compel responses to these questions, Plaintiff submits that they do not call for "legal conclusions" but rather "explore the foundation of Mr. McDonald's understanding of the facts before him." Pl.'s Mot. to Comp. 4 (ECF No. 57). "Simply put, these questions demonstrate that Mr. McDonald was operating on a factual assumption that Mr. Tighe's conduct was improper or 'crossed the line,' despite that very conduct being constitutionally protected." *Id.* at 5. McDonald's understanding of the facts is relevant, Plaintiff argues, because he ultimately advised the Board about how to deal with Plaintiff's conduct at its meetings. *Id.*

Defendants respond by arguing that asking McDonald whether certain conduct "crossed the line" equates to asking whether Plaintiff's speech is constitutionally protected – a legal conclusion. Def.'s Resp. in Opp. 7 (ECF No. 58). In the alternative, Defendants contend that if

5

the questions did not seek a "legal conclusion," they seek information that is irrelevant because "the Solicitor's subjective view of right and wrong has no bearing on this case." *Id.* at 8.

The Court is not persuaded by Defendants' argument about the impermissibility of the challenged questions. As Plaintiff argues, he was not attempting to elicit a "legal conclusion" from McDonald but was rather attempting to flesh out the conduct which led to the imposition of the alleged restrictions on Plaintiff's speech.[1] Defendants identified McDonald as a fact witness because he "observed Tighe's monthly presentations to the Board and witnessed his disruptive and defiant behavior." Def.'s Resp. in Opp 2 n.1 (ECF No. 58). McDonald confirmed in his affidavit that he "was familiar with Tighe's outbursts, his refusal to follow School Board policy governing persons who speak during the citizen forum section of its meetings, and his defiance of directives from the meeting chair given after the occurrence of those violations." McDonald Aff. 1-2 (ECF No. 57, Ex. B). He called Plaintiff's conduct "[a] pattern of disruptive activity" and opined that "a serious state of affairs had developed." *Id.* at 2. He further explained that, based on his review of "the relevant factual circumstances" and the law governing public participation at public meetings, he "developed suggested methods of addressing Tighe's inappropriate behavior." *Id.* In view of those statements, Plaintiff was entitled to inquire into the "factual circumstances" and "disruptive and defiant behavior" to which McDonald was referring. At the same time, the Court recognizes that conducting a deposition of an attorney

---

1. Even if the questions could be understood as requiring McDonald to render a "legal conclusion" or apply his understanding of First Amendment law to Plaintiff's conduct, that would not necessarily render them objectionable. *See, e.g.*, *Bernstein v. Principal Life Ins. Co.*, No. 09-4925 CM HBP, 2010 WL 4922093 (S.D.N.Y. Dec. 2, 2010) (explaining that "deposition witnesses ordinarily cannot refuse to answer a question on the ground that the question calls for a legal conclusion"); *Howell v. Standard Motor Prods., Inc.*, 4:99-CV-987-E, 2001 WL 456241 (N.D. Tex. Apr. 27, 2001) (explaining that there is no case law or provision in the Federal Rules of Civil Procedure that permit an objection to a deposition question "on the grounds that it called for a legal conclusion"); *CellNet Data Sys., Inc. v. Itron, Inc.*, 178 F.R.D. 529, 533 (N.D. Cal. 1998) (concluding that "legal conclusion" objection was meritless).

whose interests are aligned with those of the opposing parties is delicate business, rife with the potential for abuse. Thus, rather than ordering that McDonald's live deposition be re-opened, the Court will order him to provide written responses to the specific questions identified in Plaintiff's motion. Insofar as counsel for Defendants believes that McDonald's response to any of these questions might require him to reveal privileged attorney-client communications, counsel may raise a proper objection at that time.

### B. Questions About Decisions Made by the School Board

Plaintiff also contends that Defendants improperly objected to two questions concerning whether the Board had reached a decision before the August 2010 and December 2010 meetings to take action against Plaintiff if he engaged in certain behavior at subsequent meetings. The first question was, "[t]he August 18th – the Board knew there was an August 18th meeting. Did the Board decide it was going to, in any way, do anything that involved Mr. Tighe at that meeting?" McDonald Dep. 104:17-22 (ECF No. 57, Ex. C). The second question was, "[d]id the – prior to December – the December 2010 meeting, did the board come to a decision that if Mr. Tighe engaged in certain activity, the board would have the police called?" *Id.* at 220:15-20. Defendants objected based on the attorney-client privilege.

Plaintiff argues that McDonald should be compelled to answer the questions since they request "a fact or thing—the existence of a decision by General McLane"—and not a communication protected by the privilege. Pl.'s Mot. to Comp. 8 (ECF No. 57). The Court agrees. Any decision reached by the Board is not itself privileged, even if it was based on advice received from McDonald in his capacity as solicitor. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988) ("It is not the decision itself that is privileged but the confidential communications to and from the attorney and client that resulted in that decision."). Stating

7

whether a decision was reached would not necessarily reveal the content of any advice McDonald provided. Nor would it reveal the content of any of the communications between Scaletta, Fox, and McDonald. Thus, McDonald will be directed to respond to the two questions set forth above in writing.

Defendants also argue that Judge McLaughlin's ruling on the applicability of the attorney-client privilege to communications between Scaletta, Fox, and McDonald constitutes the law of the case and that this Court should defer to that prior ruling. Judge McLaughlin did previously address certain issues related to the attorney-client privilege arising from the meeting between Scaletta, Fox, and McDonald when he ruled on Defendants' motion for a protective order. *See* Memo. Opinion, July 5, 2013 (ECF No. 43). Specifically, Judge McLaughlin rejected Plaintiff's argument that the crime-fraud exception vitiated the privilege and held that any conversations between the three men were protected insofar they "related to matters communicated by the School District, in private, to its attorney for the purpose of seeking legal advice." *Id.* at 2. But Judge McLaughlin did not address the precise issue before this Court: whether McDonald may be compelled to testify about the end result of that conversation. He only decided that the specific confidential communications were privileged. Because law of the case doctrine applies only to issues actually decided or decided by implication, *In re City of Philadelphia Litigation*, 158 F.3d 711, 717–18 (3d Cir. 1998), it offers no support for Defendants' position in response to the current motion.

### C. Questions Related to Policy 903

Next, Plaintiff requests to compel responses to seven questions about the School Board's Policy 903, which sets forth the procedures that apply to members of the public who wish to participate in the Board's meetings. The questions are as follows:

- "Now, Mr. McDonald this is timestamp 7:03, is it your understanding that as the presiding officer, Mrs. Buschak was permitted to drown out Mr. Tighe's presentation and to yell at him?" McDonald Dep. 119:6-11.

- "Is it your understanding that if the presiding officer of the meeting groundlessly rules a participant out of order, that participant has to comply with the chair's directives?" *Id.* at 127:24-128:4.

- "Do you believe that Mr. Tighe's intention to address the mission statement was off topic?" *Id.* at 141:5-7.

- "From Mr. Tighe's presentation, did you observe anything that would qualify as straying from the topic, obscene loud or abusive?" *Id.* at 141:15-18.

- "From Mr. Tighe's – this is still at 9:55. From Mr. Tighe's presentation, did you observe anything that would be slanderous?" *Id.* at 141:23-142:1.

- "Mr. McDonald, this is at 10:10, is it a requirement of the 903 policies that members of the public have to sit down when Mrs. Buschak tells them to sit down?" *Id.* at 142:7-11.

- "Do you know of any authority that would permit extra parameters to be imposed on Mr. Tighe's participation, beyond what is already in the board policy for the conduct of public participants?" *Id.* at 162:3-8.

Defendants objected to each of these questions, arguing that they request McDonald's "legal opinion" about "whether the Policy was applied in an unconstitutional manner." Def.'s Resp. in Opp. 13 (ECF No. 58). They further argue that the questions "disregard[] the special limitations placed on mental impressions by an attorney or other representative concerning litigation, and attempts to delve into the thought processes of an opposing attorney." *Id.* (citing Fed. R. Civ. P. 26(b)(1) and (3)).

Defendants' argument is ill-conceived, for much the same reason that their earlier argument regarding the "cross the line" questions was rejected. More specifically, McDonald stated in his affidavit that he "was familiar with . . . [Plaintiff's] refusal to follow School Board policy governing persons who speak during the citizen forum section of its meetings . . . ." McDonald Aff. 1 (ECF No. 57, Ex. B). Thus, Plaintiff must be permitted to question McDonald

9

about the factual foundation for this statement, which apparently informed the Board's decision to impose the allegedly unlawful restrictions on Plaintiff's speech. Moreover, Defendants' reliance on the work-product doctrine embodied in Fed. R. Civ. P. 26(b)(3) is misplaced. The work-product doctrine is premised on the notion that "preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference" from the opposing party. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Those concerns are not implicated in this case. While McDonald does serve as the Board's solicitor, he is not serving as litigation counsel in this lawsuit. He has not even entered an appearance on the Board's behalf. Rather, Defendants have identified him as a fact witness. Even if he is assisting to some extent in this litigation, the questions do not implicate the work-produce doctrine because they do not seek to uncover Defendants' litigation strategy or the legal theories underlying the case. They seek only to shed light on the policy and how it was applied. Accordingly, McDonald will be ordered to answer the questions in writing.

### D. Questions About Payment of Legal Fees

Lastly, Plaintiff seeks to compel McDonald to respond to a question inquiring into whether the School District paid McDonald's law firm for drafting a Brief in Opposition to Modification of Bond Condition on behalf of the District Attorney's office in Plaintiff's related state criminal case. In Plaintiff's reply brief, he notes that one of McDonald's associates, Joseph Conti, testified in his deposition that the firm did receive payment for its work on the brief. Pl.'s Reply Br. 4 (ECF No. 59). Plaintiff contends that McDonald should likewise be required to respond. However, no purpose would be served by requiring McDonald to respond, as Plaintiff already has the information that he seeks. Permitting further inquiry into this matter, which is

clearly a point of great contention, would only invite additional and unnecessary antagonism between the parties.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion to compel will be **GRANTED** in part and **DENIED** in part. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW TIGHE**,<br>　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**MONA BUSCHAK**, *INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS PRESIDENT OF THE GENERAL MCLANE SCHOOL BOARD*; **RICK SCALETTA**, *INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SCHOOL SUPERINTENDENT*; and **BOARD OF EDUCATION OF THE GENERAL MCLANE SCHOOL DISTRICT**,<br>　　　　**Defendants.** | **1:11-cv-224** |

## ORDER OF COURT

AND NOW, this 9th day of December, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that PLAINTIFF'S MOTION TO COMPEL JAMES D. MCDONALD, JR. TO ANSWER DEPOSITION QUESTIONS (ECF No. 57) is **GRANTED** in part and **DENIED** in part as set forth in the Memorandum Opinion. James D. McDonald shall provide written responses to the questions subject to objection at McDonald's deposition **on or before December 20, 2013**.

　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　United States District Judge

cc:　**Elizabeth Farina Collura, Esquire**
　　　Email: ecollura@thorpreed.com
　　　**Robert J. Ridge, Esquire**
　　　Email: rridge@clarkhillthorpreed.com
　　　**Lawrence M. Otter, Esquire**
　　　Email: larryotter@hotmail.com

**Richard A. Lanzillo, Esquire**
Email: rlanzillo@kmgslaw.com
**Christopher J. Sinnott, Esquire**
Email: csinnott@mmbwslaw.com
**Joseph P. Conti, Esquire**
Email: jpconti@tmgattys.com