IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW TIGHE,<br>        **Plaintiff,**<br><br>        v.<br><br>**ERIC J. PURCHASE**, *personal administrator of the Estate of Mona Buschak, individually and in her official capacity as President of the General McLane School Board*; and **THE GENERAL MCLANE SCHOOL DISTRICT**,<br>        **Defendants.** | )<br>)<br>)<br>)<br>) 1:11-cv-224<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

**I.    Introduction**

Pending before the Court is DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PLAINTIFF'S CLAIMED BODILY INJURY, REPUTATIONAL HARM, AND ECONOMIC DAMAGE (ECF No. 158). Plaintiff has filed a response in opposition to the motion (ECF No. 159). Accordingly, the motion is ripe for disposition.

**II.    Discussion**

In Defendants' motion, they seek to preclude Plaintiff from claiming several items of compensatory damages, to wit: damages for the high blood pressure allegedly caused by the stress and anxiety of being ruled out of order on August 18, 2010; reputational harm; economic loss caused by the funding of his criminal defense; lost wages; and economic loss caused by the funding of this litigation. Relatedly, Defendants argue that certain evidence identified by Plaintiff as relevant to the issue of damages is not admissible. Defendants also argue that Plaintiff is precluded from recovering punitive damages because such damages are not available against a decedent or a government entity. Plaintiff responds that he is not claiming damages for economic loss in the nature of lost wages or for the costs of funding his criminal defense. On the other

1

hand, he claims that all other items of damages, including punitive damages, are recoverable and properly supported by admissible evidence. The Court will first address the issued related to compensatory damages and then turn its attention to the question of whether punitive damages may be recovered in this case.[1]

### A. Compensatory Damages

A § 1983 plaintiff's "level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986) (internal citations and quotation marks omitted). As is the case under ordinary tort law, "'the basic purpose' of § 1983 damages is 'to *compensate persons for injuries* that are *caused by the deprivation of constitutional rights*.'" *Id.* at 307 (quoting *Carey v. Piphus*, 435 U.S. 247, 254 (1978)). Compensable injuries under § 1983 include "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" *Id.* at 309 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). However, absent proof of an actual injury, in any of these forms, compensatory damages cannot be awarded. *See id.* (holding that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages"). In such case, only nominal damages ($1.00) are recoverable. *Bolden v. Se. Penn. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994) ("There is no right to damages other than nominal ones for violation of a constitutional right unless actual injury is proven.").

Whenever impairment to reputation, personal humiliation, mental anguish/suffering, or some other type of emotional distress is claimed, there must be "competent evidence" to support

---

1. Since Plaintiff has indicated that he does not intend to pursue certain items of damages that Defendants believed he might be seeking to recover, the Court will adopt the organizational structure used in Plaintiff's response when addressing the parties' contentions.

2

it. *Chainey v. State*, 523 F.3d 200, 216 (3d Cir. 2008). In *Gunby v. Pennsylvania Electric Co.*, for instance, the Court of Appeals for the Third Circuit reversed a jury's award of $15,000 in damages for emotional distress and humiliation where the only evidence to support such damages was testimony from the plaintiff that he was "very upset" by the defendant's actions. 840 F.2d 1108, 1121-22 (3d Cir.1988). Nevertheless, the Court of Appeals does not "require that a specific type of evidence be introduced to demonstrate injury in the form of emotional distress." *Bolden*, 21 F.3d at 36 (citing *Carey*, 435 U.S. at 263-64). It is also clear that expert medical evidence is not necessary to prove emotional distress or mental anguish in § 1983 actions. *Id.* (sustaining jury's award of compensatory damages based on testimony of plaintiff, "two of his friends, and his wife and daughter . . . that he had changed a great deal in the wake of" the alleged constitutional violation). Rather, "[a]lthough essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others." *Carey*, 435 U.S. at 264.

### 1. Damages to Plaintiff's Reputation

Plaintiff seeks to recover compensatory damages for the alleged harm done to his reputation by the incident at the August 18 School Board meeting. In support of this claim, he has identified two witnesses, Duane James and Al Pernisek, who purportedly can testify that his reputation has suffered.

As already noted, a § 1983 plaintiff can recover compensatory damages for "'impairment of reputation . . . .'"[2] *Stachura*, 477 U.S. at 307 (quoting *Gertz*, 418 U.S. at 350). The

---

2. Defendants seem to dispute this general rule, but the cases they have cited in support of the assertion that "stigma to reputation – in and of itself – is not actionable under § 1983" are inapposite to the issue before this Court. All of these cases address whether harm to reputation, alone, amounts to the deprivation of a liberty interest, such that it may form the basis of a procedural due process claim. *See, e.g.*, *Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir.

impairment, if any, to a plaintiff's reputation "must be measured by the perception of others, rather than that of the plaintiff because '"reputation is the estimation in which one's character is held by his neighbors or associates."' *Sprague v. Am. Bar Ass'n*, 276 F. Supp. 2d 365, 370 (E.D. Pa. 2003) (quoting *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 231 A.2d 753, 755 (1967) (quoting *Restatement, Torts* § 577, comment b (1938)). There must therefore be evidence upon which the jury can judge the consequences of the alleged constitutional violation on the plaintiff's reputation in the community – evidence of his reputation before the alleged violation and evidence showing that people in the community saw him differently after the alleged violation. Otherwise, there would be no way to determine whether his reputation has, in fact, been impaired.

With respect to James' testimony, Plaintiff points to an episode James described in his deposition, when he overheard a man in a gun shop sometime in January 2014 say that "Matt Tighe is a fucking asshole." Plaintiff contends that "[b]ased on his observation of the conversation in the gun shop, [James] perceived Mr. Tighe's reputation to be damaged, and that damage was caused by the Defendants' unconstitutional conduct." Pl.'s Br. 11, ECF No. 164.

The Court disagrees. Whenever James' deposition testimony is read as a whole, it actually tends to undermine Plaintiff's claim that his reputation has suffered. For one thing, James testified that he never discussed Plaintiff with other people (except for when his brother asked him about a job that Plaintiff had done for him). James Dep. 44:5-22, ECF No. 164-1. He also testified that his neighbor had spoken "very, very highly of [Plaintiff] . . ." in the fall of 2010. *Id.* 47:16-17. Even though he speculated that it was "quite possibl[e]" that Plaintiff's

---

1984) ("Any reputational damage he may have suffered, therefore, does not alone constitute a deprivation of liberty."). The issue here, however, is whether Plaintiff can recover compensatory damages for the alleged harm done to his reputation as a result of the alleged constitutional violation. The case law makes clear that he can, at least in theory. *See Stachura*, 477 U.S. at 307.

reputation had suffered since then on account of "what is going on," *id.* 49:19-21, the only incident he could cite in support of that supposition was what he purportedly overhead at the gun shop. However, that stray comment by an unidentified man some three years after the incident in question says nothing about whether Plaintiff's reputation was tarnished *as a result of Buschak's conduct*. Further, there is no evidence to suggest that the unidentified man who made the comment felt differently before the incident on August 18, 2010. For all James or Plaintiff or anybody else knows, the man may have held that belief about Plaintiff irrespective of what transpired between Plaintiff and Buschak on August 18. In addition, as James himself acknowledged, to the extent Plaintiff's reputation had been tarnished, it was "from what is going on." *Id.* That could mean everything that came after August 18, not necessarily the actual constitutional violation alleged to have occurred on that date. Accordingly, because James' testimony is not relevant to show that Plaintiff's reputation has been impaired by Buschak's conduct, the Court is unwilling to allow him to testify.[3]

Pernisek's proposed testimony is similarly lacking. Although Pernisek apparently observed members of the General McLane School Board acting rudely toward Plaintiff in late 2010 whenever he was campaigning for the School Board, his observations are not relevant to show that Plaintiff's reputation was damaged by the actual constitutional violation alleged to have taken place at the August 18 meeting. Instead, they establish that certain people on the School Board and in the community did not like Plaintiff. That is certainly unfortunate, but it in

---

3. Plaintiff also claims that James' testimony is relevant to his claim for emotional distress, embarrassment, and mental anguish damages. The Court fails to see how this is so, though. James was specifically asked in his deposition whether Plaintiff "ever talked to [him] personally about any personal impact his interaction with the school district may have had on him . . . ." James Dep. 72:7-11, ECF No. 164-1. In response, James said that Plaintiff had told him he might have to sell his bulldozer. *Id.* at 17-19. But he denied having ever discussed anything else "relating to any personal impact on [Plaintiff.]" *Id.* 17-21.

no way helps to support his claim for reputational damages since there is nothing connecting their feelings to Buschak's allegedly unconstitutional conduct. *Cf. Young v. Pleasant Valley Sch. Dist.*, No. 3:07-CV-00854, 2012 WL 1827194, at *21 (M.D. Pa. May 18, 2012), *aff'd*, No. 13-3605, 2015 WL 452362 (3d Cir. Feb. 4, 2015) (holding that plaintiff could not recover for emotional distress stemming from reaction of third parties to her filing of a lawsuit because the defendant did not cause the third parties' reaction). In all likelihood, considering the nature of the relationship between Plaintiff and the Board members and the School District leading up to the August 18 meeting, the people who said rude things toward Plaintiff probably would have acted the same way prior to the meeting in question.

None of this is to say that Plaintiff cannot, as a matter of law, recover damages for the harm purportedly done to his reputation. He can attempt to establish his entitlement to such damages through his own testimony and that of his wife, along with anyone else whose testimony he intends to present. It will be up the jury, with the aid of proper instructions on the law, to determine whether this testimony supports Plaintiff's claim. The testimony of James and Pernisek, however, is not relevant on this issue, and will thus be excluded from trial.

### 2. Evidence of Expenses and Costs

Plaintiff claims that he is entitled to recover two specific types of expenses and costs incurred in pursuing this litigation to trial: interest charges from borrowing funds to pay legal expenses and expenses related to the sale of assets, including his bulldozer, to pay legal expenses. He argues that he is entitled to be made whole for the losses caused by Defendants' conduct, and he will not be made whole unless he can recover "compensatory damages for the financial burden of this litigation, and the attendant costs of being able to litigate this case through trial." Pl.'s Br. 12. Plaintiff has not, however, cited any authority in support of his claim

6

that he may recover for the financial sacrifices he had to make to fund this litigation.[4] Perhaps that is not surprising because there appears to be no support for Plaintiff's position.

"Litigation is not a free good," *Lumbert v. Illinois Department of Corrections*, 827 F.2d 257, 259 (7th Cir.1987), and "[a]ll litigants . . . may have to make sacrifices to pursue a claim[,]" *Hicks v. Sec'y, Florida Dep't of Corr.*, No. 4:10CV529-RH/WCS, 2011 WL 1405155, at *1 (N.D. Fla. Feb. 28, 2011), *report and recommendation adopted*, No. 4:10CV529-RH/WCS, 2011 WL 1405152 (N.D. Fla. Apr. 13, 2011) (internal citations omitted). Under long-standing principles of American law, though, the costs and expenses one incurs in funding litigation are not recoverable as compensatory damages. *See Penn. Cnty. Risk Pool v. Northland Ins.*, No. 1:07-CV-00898, 2009 WL 506369, at *10 (M.D. Pa. Feb. 27, 2009) (explaining that "neither costs nor attorney's fees are properly construed as compensatory damages because neither one is meant to remedy plaintiffs for past injuries"). Instead, as a general rule, "each party" must "bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, --- U.S. ----, 131 S. Ct. 2205, 2213 (2011).

Of course, this rule makes it difficult for certain types of plaintiffs to obtain vindication for violations of their civil rights. To address this concern, Congress enacted 42 U.S.C. § 1988, which allows for the recovery of fees and expenses in § 1983 cases. *See id.*; *Evans v. Jeff D.*, 475 U.S. 717, 731 (1986) (explaining that Congress enacted section 1988 "to attract competent counsel to represent citizens deprived of their civil rights . . ."). Since Congress has already addressed concerns about the affordability of seeking vindication for civil rights violations through enacting § 1988, it seems that it meant for that to be the exclusive mechanism by which

---

4. The Court recognizes that Plaintiff has cited cases supporting his argument that the expenses of litigation are properly considered when determining whether to award punitive damages. However, since the Court has determined that Plaintiff cannot pursue his claim for punitive damages, it need not consider the merits of this proposition.

7

litigation expenses can be recovered. Accordingly, if Plaintiff prevails at trial, he may petition the Court for an award of fees and expenses pursuant to § 1988. But he may not also attempt recover for the expenses and financial sacrifices incurred in pursuing this litigation as an item of compensatory damages. Allowing him to do so would run directly contrary to the long-standing rule that all parties must fund their own litigation. That maxim is true even if a party must endure financial hardships in order to do so, for the "expense and annoyance of litigation is 'part of the social burden of living under government.'" *Petroleum Exploration v. Pub. Serv. Comm'n of Kentucky*, 304 U.S. 209, 222 (1938).

Consistent with this ruling, the spreadsheet compiling the interest charges on the loan, the ledger with advertising costs for the sale of the bulldozer, the agreement and checks for the sale of the bulldozer, and the tax and student loan documents will not be admissible at trial. Likewise, no evidence related to the home repairs Plaintiff forewent, including the photographs of his home, will be admissible.

### 3. Physical Manifestation of Anxiety, Stress and Mental Anguish

Plaintiff also seeks to introduce evidence and testimony concerning the anxiety, stress, and mental anguish allegedly caused by Buschak's conduct. As set forth above, a plaintiff in a § 1983 action may attempt to recover these types of damages, and Plaintiff's own testimony and the testimony of others may be sufficient to sustain a jury's award of damages for these types of injuries; expert testimony is not required.

Be that as it may, in order to recover, Plaintiff must still establish that the alleged damages were proximately caused by the particular constitutional violation at issue: Buschak's decision to interrupt his presentation at the August 18 meeting. *See Carey*, 435 U.S. at 255 (recognizing "the principle that damages are designed to compensate persons for injuries caused

by the deprivation of rights"); *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (internal citation omitted) ("It is axiomatic that '[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation.'"); *Kelley v. Bradford Cnty.*, No. 3:07-CV-1531, 2010 WL 1136313, at *8 (M.D. Pa. Mar. 23, 2010) ("Absent competent proof that the alleged violation of a constitutional right proximately caused the injury for which damages are claimed, no recovery is possible.").

By contrast, if Plaintiff's alleged damages were actually caused by everything that occurred after August 18 – the events that occurred October, November, and December meetings and during Plaintiff's criminal prosecution – they are not recoverable. The same is true if Plaintiff's anxiety and stress was actually induced by pursuing this litigation, for it is universally recognized that litigation-induced stress is not recoverable as an item of compensatory damages. *See, e.g.*, *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages . . . ."); *Knussman v. Maryland*, 272 F.3d 625, 641-42 (4th Cir. 2001) ("Generally speaking, litigation-induced emotional distress is never a compensable element of damages."); *Zimmerman v. Direct Fed. Cred. Un.*, 262 F.3d 70, 79 (1st Cir. 2001) ("[T]he heavy weight of authority holds that litigation-induced stress is not ordinarily recoverable as an element of damages."); *Picogna v. Bd. of Educ. of Twp. of Cherry Hill*, 671 A.2d 1035, 1038-39 (N.J. 1996) (collecting cases). "Although the damages caused by the wrongful conduct induce the litigation, and hence the attendant stress, a plaintiff chooses to pursue litigation cognizant of both the economic and emotional costs that it will entail . . . . Yet the substantial emotional investment made by a plaintiff in a case is merely the normal result of being a litigant." *Id.*

The Court agrees with the comments made by Defense counsel at the pretrial conference that there is a real issue as to whether Plaintiff can prove that any of the alleged physical manifestations of his stress were caused or exacerbated by what occurred on August 18, 2010, and not everything that came after, including his protracted pursuit of this litigation and all that it has entailed. Plaintiff has attempted to draw a connection between the incident on August 18 and his stress by proffering a record containing three blood-pressure readings from February and March 2015. However, these readings, which postdate the incident by several years, lack any meaning since we have no idea what Plaintiff's blood pressure was before the August 18 meeting. More to the point, there is still no way to know whether Plaintiff's high blood pressure is attributable to Buschak's conduct. In fact, it would seem nigh impossible to make this connection without expert medical testimony, which, though not required to establish the existence of an injury, may be necessary to establish causation. *See, e.g.*, *Fowler v. Carrollton Pub. Lib.*, 799 F.2d 976, 983 (5th Cir. 1986) (holding that district court erred in admitting medical records from plaintiff's brief hospital stay since there was no expert testimony to support the plaintiff's belief that her emotional distress was caused by the alleged constitutional violation (i.e., a termination)); *Mattioli v. Media News Grp.*, No. CIV. A.97-CV-4846, 1999 WL 729255, at *1 (E.D. Pa. Sept. 8, 1999) (acknowledging that expert medical testimony may be necessary to establish causation in certain § 1983 cases). The Court is, thus, loath to allow Plaintiff to admit the blood-pressure form, as it would only invite the jury to base an award of damages on speculation, which is not permitted.

Furthermore, to adequately defend against Plaintiff's claims, Defendants must be permitted to probe into the other possible causes of stress in Plaintiff's life after the August 18 meeting. To the extent that this will require the Court to relax some of its prior evidentiary

rulings with respect to the admissibility of evidence of his criminal prosecution and possibly other events after August 18, it is willing to do so. For a limited amount of information regarding certain events in Plaintiff's life after August 18 will be necessary to put his damages claims in context. The Court will, moreover, be careful to instruct the jury that Plaintiff can only recover damages caused by the events on August 18, 2010 – not for the other alleged constitutional violations, which the Court has dismissed, and not for the stress and anxiety brought about by his involvement in this lawsuit.

### B. Punitive Damages

The parties vigorously dispute whether Plaintiff may attempt to recover punitive damages from Buschak's estate.[5] There is a split of authority among the states as to whether a claim for punitive damages survives the death of the alleged wrongdoer, with most jurisdictions "disallow[ing] punitive damage recoveries after the wrongdoer has died." *In re Vajgrt*, 801 N.W.2d 570, 576 (Iowa 2011) (surveying the case law and explaining that, at least as of 2011, thirty-two states followed the majority approach and disallowed claims for punitives in these circumstances). The Restatement also endorses this approach. *See Restatement (Second) of Torts* § 908 comment a (1979). So, too, has our Appellate Court – albeit in a footnote, without much in the way of discussion. *See Savarese v. Agriss*, 883 F.2d 1194, 1210 n.15 (3d Cir. 1989) (citing *Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295, 1301 & n.5 (11th Cir. 1982); *Barnes v. Smith*, 305 F.2d 226, 231 (10th Cir. 1962); *Restatement (Second) of Torts* § 908 comment a (1979)) (noting that the trial court had allowed the jury to consider whether to award punitive damages against a decedent in a § 1983 action, even though such damages "are not generally

---

5. Defendants also argue that punitive damages are not recoverable against the School District. This point is unassailable, and Plaintiff has not attempted to argue otherwise. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983").

11

awarded against a decedent"). As Plaintiff points out, however, the Pennsylvania courts are among the minority that allows claims for punitive damages against a decedent's estate. *See G.J.D. v. Johnson*, 713 A.3d 1127 (Pa. 1998).

All of this notwithstanding, this Court is bound to apply "the federal common law of damages." *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965). This is necessary to "effect uniformity . . . ." *Id.* at 86. In enacting § 1983, Congress did not intend for "the amount of damages to be recovered by injured individual . . . to vary because of the law of the state in which the federal court suit was brought." *Id.* Under federal law, punitive damage awards exist "to punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Smith v. Wade*, 461 U.S. 30, 54 (1983) (internal citation omitted). At least one other federal district court has addressed this question, and found that imposing punitive damages on a decedent's estate would not serve two of the primary goals of punitive damages – punishment and individual deterrence. *See Kahlily v. Francis*, No. 08 C 1515, 2008 WL 5244596, at *6 (N.D. Ill. Dec. 16, 2008). As that court explained:

> Although imposing punitive damages in such situations could provide deterrence to other officers, other forms of deterrence already exist to prevent state officials from committing constitutional torts. Other principles, such as the interest in avoiding liability for compensatory damages and the devotion to public duty, operate to deter state officials from engaging in the type of conduct that can give rise to liability for punitive damages. *See Smith*, 461 U.S. 50. Whatever incremental deterrence value imposing punitive damages on deceased defendants would have on others does not outweigh the fact that two of the major purposes for imposing punitive damages would not be served at all.

*Id.* The Court is persuaded by this reasoning. Thus, the Court will apply it here and conclude that Plaintiff may not seek to recover punitive damages from Buschak's estate.

### III. Conclusion

For all the foregoing reasons, Defendant's motion will be **GRANTED IN PART**, insofar

as it seeks to preclude James and Pernisek from testifying; seeks to preclude Plaintiff from introducing evidence on the issues of and attempting to recover for the financial expenses and sacrifices incurred in pursuing this litigation; seeks to preclude Plaintiff from introducing the blood-pressure form; and seeks to preclude Plaintiff from introducing evidence on and attempting to recover punitive damages. The motion will be **DENIED IN PART** in all other respects. Thus, Plaintiff may attempt to recover for reputational harm and other types of emotional distress, but only to the extent there is evidence showing that it was *caused by Buschak's conduct on August 18, 2010*. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW TIGHE**, <br>         Plaintiff, <br><br> v. <br><br> **ERIC J. PURCHASE**, *personal administrator of the Estate of Mona Buschak, individually and in her official capacity as President of the General McLane School Board*; and **THE GENERAL MCLANE SCHOOL DISTRICT**, <br>         Defendants. | ) <br> ) <br> ) <br> )   1:11-cv-224 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER

**AND NOW**, this 1st day of May, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's motion is be **GRANTED IN PART**, insofar as it seeks to preclude James and Pernisek from testifying; seeks to preclude Plaintiff from introducing evidence on the issues of and attempting to recover for the financial expenses and sacrifices incurred in pursuing this litigation; seeks to preclude Plaintiff from introducing the blood-pressure form; and seeks to preclude Plaintiff from introducing evidence on and attempting to recover punitive damages. The motion is **DENIED IN PART** in all other respects.

                                                        BY THE COURT:

                                                        s/Terrence F. McVerry <br>
                                                        Senior United States District Judge

cc:    **Elizabeth Farina Collura, Esquire** <br>
      Email: ecollura@thorpreed.com <br>
      **Richard A. Lanzillo, Esquire** <br>
      Email: rlanzillo@kmgslaw.com <br>
      **Christopher J. Sinnott, Equire** <br>
      Email: csinnott@mmbwslaw.com <br>
      **Gary Eiben, Esquire** <br>
      Email: geiben@tmgattys.com